UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| RUSCHEL S. JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:12-CV-91-JAR |
| ) | |
| CAROLYN COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant.¹ ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Ruschel S. Jenkins' ("Jenkins") application for disability insurance benefits pursuant to 42 U.S.C. § 423 under the Social Security Act.

**I.      Background**

On February 6, 2008, Jenkins protectively filed an application for disability insurance under Title II of the Act, 42 U.S.C. §§401, *et seq*. (Tr. 189).  She was born in 1974 and alleged disability beginning September 1, 2006.  (Id.)  Jenkins alleges in her disability report that she suffers from lupus and an anxiety panic disorder.  (Tr. 229-37.)  She also states that she is unable to work because she is allergic to the sun and because her anxiety and panic disorder causes her to have breakdowns.  The Social Security Administration denied Jenkins' application for benefits initially, and she filed a timely request for a hearing before an Administrative Law Judge

---

¹Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

("ALJ"). On March 12, 2010, following a hearing, the ALJ issued an unfavorable decision. (Tr. 75.) On May 12, 2010, Jenkins filed an application for Supplemental Security Income (SSI) benefits. (Tr. 204.)

The Appeals Council granted Jenkins' request for a review under 20 CFR §404.977 and vacated the hearing decision. (Tr. 91-94.) In the July 29, 2010 Remand Order, the Appeals Council directed the ALJ to further evaluate Jenkins' subjective complaints and medical evidence regarding the possible impairments of headaches; further evaluate Jenkins' mental health impairments; further consider Jenkins' maximum Residual Functional Capacity ("RFC") with references to the record and evaluate treating source opinions and nonexamining source opinions; further evaluate Jenkins' ability to perform her past work, and make findings regarding the physical and mental demands of her past work and compare her RFC with the demands of her past work; and, if warranted, obtain evidence from a vocational expert. (Id.)

On October 13, 2011, following a video hearing, the ALJ found that Jenkins was not under a disability, as defined under the Act, from September 1, 2006 through March 31, 2007. (Tr. 8-21.)[2]

The Appeals Council denied Jenkins' request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Jenkins filed this appeal on December 19, 2012. (ECF No. 1). The Commissioner filed an Answer. (ECF No. 9.) Jenkins filed a Brief in Support of her Complaint. (ECF No. 19.) The Commissioner filed a Brief in Support of the Answer. (ECF No. 24).

---

[2] The ALJ says that the alleged period of disability is from August 1, 2006 through March 31, 2007 (Tr. 8), but Jenkins states in her disability report that her disability began on September 1, 2006 (Tr. 230.)

2

## II. Decision of the ALJ

The ALJ determined that Jenkins last met the insured status under the Social Security Act on March 31, 2007. (Tr. 11.) The ALJ determined that Jenkins did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2006 through her date last insured of March 31, 2007 ("date last insured"). (Id.)

Jenkins' date last insured is important because her insured status under Title II of the Act expired on March 31, 2007. (Tr. 8, 197, 219, 226.) To be entitled to disability benefits under Title II of the Act, Jenkins has the burden to show that she was disabled prior to March 31, 2007, the date last insured. (Id.); see also 20 C.F.R. §404.130; Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006). Jenkins' earning record shows that she acquired sufficient quarters of coverage to remain insured through March 31, 2007, so Jenkins has to establish disability on or before that date to be entitled to disability insurance benefits. (Tr. 9.) Thus, the relevant period for consideration in this case is only from September 1, 2006 (the date Jenkins alleges she became disabled) through March 31, 2007 (the date her insured status expired under Title II).

The ALJ found that, from her alleged onset through her date last insured, March 31, 2007, Jenkins had the following "severe" physical and mental impairments: discoid lupus; wrist pain with mild hand tremors; anxiety disorder; and panic disorder with agoraphobia. (Id.) The ALJ also determined that she had the non-severe impairments of "mild" gastritis, history of headaches and early carpal tunnel syndrome. (Tr. 13.)

Considering all of the evidence, the ALJ found that Jenkins did not have any impairments or combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1, through the date last insured of March 31, 2007. (Tr. 13).

The ALJ found, through the last date insured of March 31, 2007, Jenkins had the RFC to perform less than a full range of "light work," as defined in 20 CFR 404.1567(b), which he defined as:

> [M]ust work indoors; must avoid exposure to sunlight; must avoid exposure to temperature extremes of 80 degrees or more and 65 degrees or less; frequently, but not constantly, user her bilateral upper extremities for handling and fingering; understand, remember, and carry out simple instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; and have only incidental, superficial work-related contact with co-workers and supervisors.

(Tr. 15.) The ALJ also determined that Jenkins was unable to perform any past relevant work as a tax preparer, teacher's aide or cabinet stainer. (Tr. 18.)

Finally, the ALJ discerned that, through the date last insured, jobs existed in significant number in the national economy that Jenkins could have performed, given her RFC. (Tr. 19.) Jenkins could have performed jobs such as routing clerk, inspector and hand packager, and suture polisher. (Id.) The ALJ ultimately concluded that Jenkins was not under a disability, as defined in the SSA, at any time from September 1, 2006, the alleged onset date, through March 31, 2007. (Tr. 20.)

Jenkins appeals contending that the ALJ erred and that her case should be remanded to the Commissioner with instructions that a third hearing be held, that the ALJ consider all of Jenkins' medical records, and that the ALJ consider evidence from Jenkins' family and friends in regard to her condition before her date last insured. (ECF No. 19 at 36-37.). The Commissioner contends that the ALJ's decision is supported by substantial evidence on the record as a whole. (ECF No. 24.)

**III.     Hearing Testimony**

      **1.     Jenkins' Testimony on January 13, 2010**

Jenkins testified as follows.  Jenkins was 35 years old.  (Tr. 34.)  Jenkins completed 9th grade in school.  (Tr. 34.)  She has been unable to work since September 1, 2006 because of her anxiety disorder.  (Id.)  Jenkins says she has a "nervous breakdown pretty much" every time she tries to hold down a job.  (Id.)   She shakes, cannot concentrate, and her head races.  (Tr. 34-35.)  By the afternoon, she is wiped out and has to take a nap for 30 minutes to an hour and a half.  (Tr. 35.)  Dr. Fitzgerald is treating Jenkins for anxiety.  (Id.)  She was prescribed various medications to treat her anxiety.  (Id.)  Paxil made her grow ulcers.  (Id.)  If someone notices her, then her anxiety is triggered.  (Id.)  Her anxiety causes crying spells.  (Tr. 36.)  Then, by 3:00 or 5:00, she comes down with a severe headache.  (Id.)  She says she's a very happy person for the most part, but her anxiety has gotten worse with the death of her father and as she gets older.  (Id.)  She does not answer the phone or have many visitors.  (Tr. 37.)  She left her job at Security Finance because of her anxiety.  (Id.)   She quit school in 9th grade because of her anxiety, because she did not have a father, and because her mom was going through menopause.  (Tr. 38.)  She has to put up dark curtains in her house and tint her windows because of her lupus.  (Tr. 39.)  She gets lesions or bad rashes on her face and chest; they are worse in the winter or if she is stressed.  (Id.)  She takes Plaquenil, which shuts down her immune system, for her lupus.  (Id.)  She has to have blood tests every three months.  (Id.)  She gets joint pain and "flare ups" in her hands, knees and hips, as well as pain in her back and neck.  (Tr. 40.)  She has had headaches her whole life.  (Id.)

She cannot write long letters or her hands tighten up. (Tr. 41.) If she is in the middle of an anxiety attack, she cannot write anything. (Id.) She is sick to her stomach all of the time with nervousness. (Id.)

### 2. Jenkins' Testimony on July 20, 2011

Jenkins lives with her husband and three children who are 17, 12, and 8. (Tr. 48.) She has no vocational training. (Tr. 49.) She has had no job since 1996 where she has earned at least $600 or $700 in one month. (Id.) In 2006 she was watching a four and a six year old for $20 per week. (Tr. 50.) She has had no other employment. (Id.)

Jenkins began seeing Dr. Murphy in 2004 for problems in her wrists, including shooting pains and tingling in her fingers. (Tr. 51.) In 2006-07, Jenkins also complained to Dr. Murphy of a long history of migraine headaches. (Tr. 52.) Jenkins took (and continues to take) Tylenol for these headaches; she cannot take anything stronger due to her lupus. (Id.) Jenkins had headaches every day that required trips to the ER or caused her to lie down in a dark room. (Tr. 52-53.)

Jenkins saw Dr. Despain in October 2005 for a big sore on her face caused by lupus. (Tr. 53.) In 2006-07, Jenkins was getting rashes all the time on her face and chest which were painful because of the swelling and itching. (Tr. 53-54.) Jenkins also reported having shaking spells twice a day to Dr. Despain. (Tr. 54.) Dr. Despain gave her Klonopin. (Id.) When Jenkins saw Dr. Murphy in January 2007, she was also having shaking spells that would wipe her out. (Id.)

Since Jenkins started taking Klonopin, she stopped getting the panic attacks but her nervous system has shut down. (Tr. 55.) She was crying two to three times per week and her OCD got worse. (Id.)

Dr. Newton, a psychologist, diagnosed Jenkins with panic anxiety disorder. (Tr. 55.) In response to the ALJ's question if she experienced caffeine-induced anxiety, she stated that it has been a couple of years since she had a lot of caffeine on a daily basis. (Tr. 56.) Jenkins' anxiety has continued to be bad, even though she gave up caffeine. (Id.)

She stopped going to the grocery store because she would end up in the car crying. (Tr. 56.) She can no longer go to baseball games for her kids or ride horses. (Id.)

She had a "suicidal gesture" in 1992. (Tr. 56.) Her parents are divorced so she never felt like she fit in. (Id.) She would never commit suicide because she has God. (Id.)

Jenkins was sexually abused as a young child at school and at home. (Tr. 57-58.) This memory just came back about five years ago. (Id.) Jenkins thinks about the abuse constantly. (Id.)

Jenkins obsessively washes her hands. (Tr. 58-59.) She has noticed her problem with this only in the last few years. (Tr. 59.)

One of her pupils is bigger than the other, but she currently has no problems with her eyesight. (Tr. 59.) She has migraines two to three times per week. (Id.) She sees Dr. Kahn in Moberly for her headaches. (Tr. 60.)

Jenkins said the lupus is "shutting [her] immune system down." (Tr. 60.) She catches childhood diseases and infections. (Id.) She has a fungus infection in her esophagus. (Id.) She has unknown sores in her esophagus that the doctors think is damage from Plaquenil, a lupus medication. (Id.)

Jenkins' normal weight is 125 pounds but she currently weighs 111 pounds because she has been throwing up due to illness. (Tr. 60-61.)

Jenkins left school after the 9th grade because she had gone to a new school and hated it because no one liked her and she could not keep her grades up. (Tr. 61.) Jenkins tried Douglas, an alternative school, to get her GED, but she had trouble actually walking into the door of the classroom. (Tr. 61-62.)

From September 2006 through March 2007, Jenkins was cooking, doing dishes, light house work, laundry, and driving a car. (Tr. 62-63.) She was not taking out the garbage or doing any yard work. (Tr. 63.) Twice a month she went to the grocery store. (Id.) She had no hobbies. (Id.) She did bible studies at her mom's house occasionally. (Tr. 63-64.) She did not exercise. (Tr. 64.) She had one girlfriend that came to visit her. (Id.) She did not eat out. (Tr. 64-65.) Her husband handled the finances. (Tr. 65.) She was able to balance a checkbook. (Id.) She was able to perform her own personal hygiene and grooming. (Id.) She did not keep up with her appointments or medication. (Id.) She did not read or use a computer. (Id.) She did not have a cell phone. (Id.) She would sit most of the day. (Tr. 66.) She could stand in one spot for about 10 minutes before she would have to sit down. (Id.) She would walk about 200 yards. (Id.) She could lift less than 10 pounds—about a gallon of milk. (Tr. 66-67.)

### 3. Vocational Expert's Testimony on July 20, 2011

Vocational Expert Marcia Hill testified as follows.

The ALJ asked Hill to consider a hypothetical individual of the same age, education, vocational background as Jenkins and with the following physical exertional requirements: light work, as defined in the regulations, work must be performed indoors away from any exposure to sunlight, must avoid temperature extremes (nothing more than 80 degrees and nothing less than 65 degrees), work that requires the ability only to carry out simple instructions, no contact with the general public and only incidental or superficial work related contact with supervisors and

coworkers. (Tr. 68-69.) Hill testified that such a hypothetical person could perform work as a routing clerk, inspector and hand packager, or a finisher polisher. (Tr. 69.)

If the hypothetical person could only occasionally use her upper extremities for handling and fingering, then no jobs would be available. (Id.)

## IV. Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work.[3] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his or her RFC. Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008); see also Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. Id.; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step V.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. Id.; see also 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." Goff, 421 F.3d at 790; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).

---

[3] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." Mueller v. Astrue, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id.; see also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. See Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002); see also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. Krogmeier, 294 F.3d at 1022.

## V.     Discussion

Jenkins alleges that the ALJ erred in considering only evidence of disability prior to March 31, 2007 (the date her insured status expired under Title II). (ECF No. 19 at 27.) Jenkins

contends that, pursuant to the Appeals Council's order of remand and Eighth Circuit case law, the second ALJ was required to evaluate all of the evidence in the record (even if it occurred after March 31, 2007) to determine if Jenkins was disabled prior to March 31, 2007.

In the its July 29, 2010 Order, the Appeals Council noted, in relevant part, that the ALJ's decision did not contain an evaluation of treating physician, Adam Fitzgerald, M.D., who expressed the opinion, on January 3, 2010, that Jenkins would have no useful ability to deal with work stresses or maintain attention and concentration, would have a seriously limited ability to deal with the public, use judgment, interact with supervisors, understand, remember and carry out complex jobs instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (Tr. 91-92.) The Appeals Council stated that Dr. Fitzgerald's assessment suggests much greater mental limitations than reflected in the decision. (Tr. 92.) The Appeals Council believed that the ALJ's opinion did not explain why Dr. Fitzgerald's assessment was rejected. (Id.) On remand, the Appeals Council ordered the ALJ to give further consideration to Jenkins' maximum RFC and provide appropriate rationale with specific references to the record in support of the assessed limitations. (Tr. 93.) The Appeals Council also ordered the ALJ to evaluate the treating source opinions and nonexamining source opinions and explain the weight given to such opinion evidence. (Id.)

In his decision of October 13, 2011, the ALJ states that "[m]ost of the claimant's medical evidence is dated after the March 31, 2007 date last insured status that will not be included in this adjudication period." (Tr. 11.) Jenkins claims that this statement means that the ALJ would not consider any medical evidence dated after March 31, 2007. (ECF No. 19 at 28.) Jenkins notes that the ALJ's discussion of the available medical evidence begins at January 5, 2004 and

12

ends at February 15, 2007, with the exception of a notation that from March 2007 through October 2007 she was on Celexa. (Tr. 11-12, 13.)

In response, the Commissioner argues that the ALJ properly considered the entire record to determine that Jenkins was not disabled at any time from her alleged onset date of September 1, 2006 through her date last insured, March 31, 2007. (ECF No. 24 at 5.) The Commissioner agrees that "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Cox, 471 F.3d at 907 ("Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'")(quoting Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir.1998)); ECF No. 24 at 5. The Commissioner, however, emphasizes that "to be entitled to benefits Plaintiff must prove she was disabled before her insurance expired." (ECF No. 24 at 5 (citing Cox, 471 F.3d at 907). Instead, the Commissioner argues that evidence that Jenkins was able to perform the activities of daily living and medical evidence prior to her date last insured provides sufficient evidence that she was not disabled prior to March 31, 2007. (ECF No. 24 at 5-7.)

In Cox v. Barnhart, however, the ALJ considered medical evidence from after the time when the claimant's insured status expired. The Eight Circuit noted that "[a]lthough the ALJ did not give Dr. Hackbarth's opinion controlling weight, he did not ignore it entirely as Cox contends." Cox, 471 F.3d at 907. In contrast, here, the ALJ failed to address the medical source evidence after the date last insured, including the opinion of Dr. Fitzgerald. Dr. Fitzgerald, for example, stated that Jenkins' anxiety and depression "have been chronic beginning in childhood but have worsened over the past three years." (Tr. 832.) Dr. Fitzgerald noted that "Ruschel's typical response is one where she seeks isolation, becomes tearful, and is unable to process

13

situations and make appropriate decisions to handle the given situation. With this type of response, Ruschell found herself unable to perform the tasks required of her in full-time employment." (Id.) The ALJ never addresses this opinion, which clearly implicates the time period before the date last insured. Further, the ALJ did not follow the directive of the Appeals Council, which ordered the ALJ to consider the opinions of Dr. Fitzgerald, even though his opinions were provided outside of the insured period. See Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)("medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status"); Bastian v. Schweiker, 712 F.2d 1278, 1282, n.4 (8th Cir.1983); Boyd v. Heckler, 704 F.2d 1207, 1211 (11th Cir.1983); Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir.1981); Poe v. Harris, 644 F.2d 721, 723 n. 2 (8th Cir.1981); Gold v. Secretary of H.E.W., 463 F.2d 38, 41–42 (2d Cir.1972); Berven v. Gardner, 414 F.2d 857, 861 (8th Cir.1969). The Court finds the ALJ's narrow focus upon the medical records solely prior to the date last insured to be error and contrary to the remand order of the Appeals Council. On remand, the ALJ must consider and evaluate medical evidence that occurred after the date last insured if it relates to or implicates Jenkins' medical condition during the insured period.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the ALJ to again give further consideration to Jenkins' maximum RFC and provide appropriate rationale with specific references to the record in support of the assessed limitations and to evaluate the treating source opinions and nonexamining source opinions and explain the weight given to such opinion evidence, even if such opinions were provided after the date last insured.

The ALJ must state whether such medical opinions pertain to Jenkins' condition prior to the date insured date and, if so, explain their relevance to the ALJ's disability determination.

A separate written judgment will be entered on this date in favor of Jenkins and reversing and remanding this case for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

Dated this 26th day of March, 2014.

                                                                                    JOHN A. ROSS
                                                                                    UNITED STATES DISTRICT JUDGE